THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* EDWARD H. M. HORCHLER, Plaintiff in Error.

*Opinion filed December 17, 1907—Rehearing denied Feb. 6, 1908.*

1. CRIMINAL LAW—*jury are judges of the facts and the credibility of witnesses.* The jury are the judges of the facts and of the credibility of witnesses, and their verdict of guilty in a criminal case will not be set aside upon the facts unless their finding is not sustained by the evidence or is contrary to its decided weight.

2. SAME—*when giving inapplicable instructions is not harmful.* Giving an instruction defining an assault with intent to commit a felony and stating the maximum penalty therefor, and one defining the crime of rape and stating its punishment, which instructions, respectively, precede and follow an instruction defining an assault with intent to commit rape without stating the punishment therefor, is not prejudicial error, even though the instructions are inapplicable, where the jury found the defendant guilty of assault with intent to commit rape, as was charged in the indictment.

3. SAME—*when instruction, though subject to criticism, is not ground for reversal.* An instruction for the People upon the subject of the credibility of witnesses, which concludes with the statement that the jury should determine the amount of credence to which each statement is entitled, as reasonable and intelligent men, but that "your power and duty to judge the effect of evidence is not arbitrary, but it should be exercised with discretion and in conformity to the instructions of the court," while subject to criticism is not ground for reversal. (*Hayner* v. *People,* 213 Ill. 142, distinguished.)

WRIT OF ERROR to the Criminal Court.of Cook county; the Hon. M. KAVANAGH, Judge, presiding.

BURRES & McKINLEY, and CHARLES P. R. MACAULAY, for plaintiff in error.

W. H. STEAD, Attorney General, and JOHN J. HEALY, State's Attorney, (F. L. BARNETT, and JOEL C. FITCH, of counsel,) for the People.

Mr. JUSTICE FARMER delivered the opinion of the court:

Plaintiff in error was tried and convicted in the criminal court of Cook county of an assault with intent to commit rape. The indictment contained two counts. The first charged that plaintiff in error "did`unlawfully make an assault upon one Catherine Lindgren, then and there being a female, with intent then and there feloniously and forcibly to ravish and carnally know said Catherine Lindgren against her will." The second count charged that plaintiff in error "violently and feloniously did make an assault in and upon one Catherine Lindgren, then and there being a female, and her, the said Catherine Lindgren, then and there, violently and against her will, feloniously and forcibly did attempt to ravish and carnally know." Upon the trial under said indictment the jury returned a verdict finding defendant guilty "of assault with intent to rape, in manner and form as charged in the indictment." A motion for a new trial by plaintiff in error was overruled by the court and he was sentenced to an indeterminate term in the penitentiary at Joliet. To review that judgment this writ of error was sued out.

It is first contended by plaintiff in error that the evidence was insufficient to justify a conviction of the crime of assault with intent to commit rape. At the time the alleged offense was committed plaintiff in error was a constable. Catherine Lindgren, a girl sixteen years of age,

was living with her mother, Elizabeth Lindgren, and a younger sister and brother, in the city of Chicago. Mrs. Lindgren kept a few roomers, also, in her house. A woman named Minnie Parks had been a roomer at Mrs. Lindgren's. She appears to have left there and sued out a writ of replevin to recover some trunks which she claimed belonged to her and charged were in the possession of and detained by Mrs. Lindgren. This writ of replevin was placed in the hands of plaintiff in error to execute. Previous to this time he had been at Mrs. Lindgren's house to collect by execution some $13 or $14 from her. There appears to have been some little trouble between plaintiff in error and Mrs. Lindgren on that occasion. She paid the amount of the execution. July 23, 1906, plaintiff in error, a man named Cahn and Minnie Parks went to the house of Mrs. Lindgren together in an express wagon. Plaintiff in error had the replevin writ and made demand of Mrs. Lindgren for the trunks. He testified she denied they were in the house and drew a revolver on him; that he tried some of the inner doors and found them locked, and after some difficulty between Minnie Parks and Mrs. Lindgren, he, Cahn and Minnie Parks went away and Minnie Parks caused a warrant to be issued for the arrest of Mrs. Lindgren charging her with larceny as bailee. The warrant was placed in the hands of plaintiff in error. He went to the house of Mrs. Lindgren to execute it but found her absent. He returned again the next day, accompanied by Cahn. Catherine Lindgren and Florence Duger, the latter a girl eighteen or nineteen years of age, testified that after plaintiff in error and Cahn had entered the house and come into the room where they were, plaintiff in error told Catherine he had a warrant for her mother, which was the same as if he had one for her, and told her to go with him; that Catherine told him she would have to dress, and plaintiff in error replied he would go in the room with her and see her dress; that she objected to his doing so and he and Cahn went away.

These witnesses further testified that a little later plaintiff in error and Cahn returned to the house, entered it and came into the dining room, in the basement, where the girls were, and plaintiff in error said, "Are you game, girls?" that this frightened them and they ran up-stairs; that Cahn followed them and caught Florence Duger, whereupon Catherine turned and ran down-stairs and was caught by plaintiff in error. We shall not set out the testimony of Catherine Lindgren and Florence Duger as to all that occurred on this occasion. If their testimony is true it justified the verdict of the jury finding plaintiff in error guilty. They and plaintiff in error are the only persons who testified who were present at the time the crime was alleged to have been committed.

Plaintiff in error testified he never laid his hands on either of the girls; that the first time he was at Mrs. Lindgren's house with the warrant for her arrest he inquired of the daughter when her mother would be at home, and was told by the daughter that she did not know; that he and Cahn then went to a place not far from Mrs. Lindgren's to arrest a man by the name of McHighan, for whom he had a warrant; that after making the arrest he and Cahn, with the prisoner, went to Mrs. Lindgren's house; that when they entered the house at this time there were present in the house, together, Catherine Lindgren, Florence Duger, Mrs. Cousins, Mrs. Fitzgerald, another lady whose name he did not remember, and the two younger children of Mrs. Lindgren. He testified that in the presense of all these parties and the prisoner, McHighan, Catherine Lindgren and Florence Duger proposed to him and Cahn if they would get rid of the warrant for Mrs. Lindgren they would go up-stairs with them, and Florence would permit Cahn to have sexual intercourse with her and Catherine would permit plaintiff in error to have sexual intercourse with her; that he replied he could not do anything of that kind, but that Florence went up-stairs with Cahn and remained forty-

five or fifty minutes; that he (plaintiff in error) remained
in the room down-stairs with the prisoner and the other
parties until Florence and Cahn came down; that Florence
then told him if he would go with her she would "fix him
up too" to get rid of the warrant, but that he declined her
proposal. He also testified that Mrs. Cousins proposed to
go to a room with him if he would "kill the warrant." He
testified all these proposals were made in the presence of all
the parties whom he named as being present in the house.
There is a conflict between the testimony of plaintiff in error
and the two girls about anybody being present besides them-
selves, Cahn and plaintiff in error, except the two younger
children of Mrs. Lindgren. There appear to have been two
or three other women in the house, but according to the
testimony for the prosecution they were on floors above
where the alleged acts were committed. If the jury believed
the testimony for the prosecution they were justified in find-
ing the defendant guilty. If they believed the story of the
plaintiff in error they would not have been justified in so
finding. The fact that they found him guilty is conclusive
that they did not believe his story but believed the testimony
of the witnesses for the prosecution. They were the judges
of the facts and the credibility of the witnesses. In *Steffy
v. People,* 130 Ill. 98, plaintiff in error was convicted of
an assault with intent to commit murder, and one of the
grounds upon which a reversal of the judgment was asked
was that the verdict was contrary to the evidence. This
court said (p. 99) : "Whether the evidence warranted the
verdict was a question of fact peculiarly within the province
of the jury to determine, and great weight is to be given to
their finding. Courts are reluctant to substitute their opin-
ion for that of the jury upon controverted questions of fact.
To justify this court in reversing on the ground that the
evidence was insufficient, it must appear that the finding of
the jury is not sustained by the evidence or that it is pal-
pably contrary to the decided weight of the evidence." Many

other authorities will be found in our Reports to the same effect.

We conclude, from an examination of all the testimony, that we would not be justified in disturbing the verdict on the ground that it was contrary to the evidence.

The first instruction for the prosecution told the jury what constituted the offense of an attempt to commit a crime where no express provision is made by law for the punishment of such attempt, and that the punishment for such offense when the crime attempted is a felony is by imprisonment in the penitentiary not less than one or more than five years. The second instruction was as follows:

"The court instructs the jury, in the language of the statute, that an assault with intent to commit murder, rape, mayhem, robbery, larceny or other felony shall subject the offender to imprisonment in the penitentiary."

The third instruction defined the crime of rape and the punishment provided by statute therefor. Both counsel for plaintiff in error and defendant in error treat the first count of the indictment as a charge of an assault with intent to commit rape and the second count as a charge of an attempt to commit a felony,—*i. e.,* rape. We are unable to see any substantial difference between the two counts. Both are good counts for an assault with intent to commit rape.

Counsel for plaintiff in error contend that by the first instruction telling the jury an attempt to commit a felony is punishable by imprisonment in the penitentiary not less than one nor more than five years, the third one defining rape and the punishment therefor, and the second one defining an assault with intent to commit rape in the language of the statute, and telling the jury that the punishment for that offense was imprisonment in the penitentiary, without stating the term for which an offender under that provision of the Criminal Code might be imprisoned, was calculated to confuse and mislead the jury. Counsel's argument is, that taking these three instructions together the jury were

likely to understand that an assault with an intent to commit rape was punishable as an attempt to commit a felony, the maximum term of imprisonment for that offense being five years while the maximum term for an assault to commit rape is fourteen years, and it is argued the jury, if they had understood the law, might have been unwilling to inflict the punishment for an assault with intent to commit rape. We see no reason why instructions 1 and 3 should have been given. As we read and understand the indictment they were not applicable to any offense charged in either count. This whole record shows that the case was prosecuted and defended as a charge of an assault with intent to commit rape. The jury were told by the second instruction that the punishment for that offense was imprisonment in the penitentiary. True, the instruction did not inform the jury of the maximum term of such imprisonment, but the jury had nothing to do with the fixing of the term of the imprisonment. Their duty was to determine the question of the guilt or innocence of the accused. By their verdict they found him guilty, not of an attempt to commit a felony, but of an assault with an intent to commit rape in manner and form as charged in the indictment. This, as we have before said, they were warranted by the evidence in doing, and plaintiff in error was not prejudiced by the first and third instructions.

The fourth instruction for the prosecution was upon the subject of the credibility of the witnesses and the jury being the judges thereof. The concluding sentence of the instruction was as follows: "You should determine the amount of credence to which each statement is entitled at your hands, as reasonable and intelligent men; but in this respect you must remember that your power and duty to judge the effect of evidence is not arbitrary, but it should be exercised with discretion and in conformity to the instructions of the court bearing upon the subject." This is the portion of the instruction complained of, and while we

think it justly subject to criticism, it had not such harmful effect as to require a reversal of this judgment. It is claimed by counsel an instruction containing similar language was condemned in *Hayner* v. *People,* 213 Ill. 142. Some of the language in the instruction there condemned was very similar to the language complained of in the instruction here, but we think there is a marked distinction between the two instructions. In the *Hayner case* the instruction told the jury that their power and duty to judge the effect of the evidence should be exercised with legal discretion and in subordination to the rules of evidence. The court said (p. 152): "There was no explanation what constituted legal discretion or what rules of evidence their judgment should be subordinate to." The instruction before us told the jury they should exercise their power and duty in judging of the effect of evidence "with discretion and in conformity to the instructions of the court bearing upon the subject." It did not tell the jury they were to exercise their judgment in subordination to something of which they had not been informed. The instructions of the court were before them for their guidance. It was the duty of the jury, in determining the effect of the evidence, to act with discretion and in conformity with the instructions of the court, so that no incorrect principle was stated; and while we do not commend the instruction, giving it in this case was not reversible error.

Complaint is also made of instructions 5, 6 and 8 given for the prosecution. Instruction No. 5 was approved by this court in *Spies* v. *People,* 122 Ill. 1, and instruction No. 6 was approved in the *Spies case* and also in *Watt* v. *People,* 126 Ill. 9. The eighth instruction is said to have been prepared by the court and given on his own motion. It is a long instruction, consisting of one paragraph. It might have been better to have divided it into two paragraphs, but it contains correct principles of law and carefully guards the rights of the accused. In fact, it is almost

entirely such an instruction as the defendant in a criminal case would usually desire to have given the jury.

Complaint also is made of the refusal of the court to give instruction No. 13 asked by plaintiff in error. All that is contained in that instruction was given to the jury in other instructions given by the court, and plaintiff in error has no just cause of complaint on account of the refusal of said instruction.

The judgment of the criminal court is affirmed.

*Judgment affirmed.*