---

(No. 12698.—Reversed and remanded.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CHARLEY BROWN *et al.* Plaintiffs in Error.

*Opinion filed June 18, 1919.*

1. CRIMINAL LAW—*what must be proved to sustain charge of assault to commit murder.* To sustain the charge of assault with intent to commit murder, such facts must be proved that if death had resulted from the assault the assailant would have been guilty of murder.

2. SAME—*malice is an essential element to constitute murder.* Malice aforethought is an essential element to constitute murder, but malice may be implied where no considerable provocation appears or all the facts show an abandoned and malignant heart.

3. SAME—*when shooting at a police officer attempting arrest is not an assault to commit murder.* A charge of assault with intent to commit murder is not sustained by evidence that the defendants shot at a police officer who began pursuing them without a warrant and who fired the first shot in the pursuit, where it is not shown beyond a reasonable doubt that the defendants knew their pursuer was a policeman and there is no proof that they had been guilty of any crime or unlawful conduct.

THOMPSON, J., dissenting.

WRIT OF ERROR to the City Court of Granite City; the Hon. M. R. SULLIVAN, Judge, presiding.

BURROUGHS & RYDER, for plaintiffs in error.

EDWARD J. BRUNDAGE, Attorney General, JOSEPH P. STREUBER, State's Attorney, and JAMES B. SEARCY, for the People.

Mr. JUSTICE FARMER delivered the opinion of the court:

Charley Brown, Ed Morrison and Charles Payne were indicted by the grand jury of the city court of Granite City, Madison county, Illinois, for an assault with intent to murder Jeremiah Odem, who was a police officer of Granite City. The assault is alleged to have been committed on June 12, 1917. They were tried and convicted in December, 1918, and sentenced to confinement in the penitentiary at Chester. Since the trial Payne has died, and defendants Morrison and Brown have sued out this writ of error.

The defendants did not testify on the trial. The record discloses that on June 12, 1917, and previously, a considerable number of men were at work in the southwesterly part of Granite City constructing a sewer and a number of teams were used in hauling. Defendants are colored men who were working at driving teams for the contractor having in charge the work. On the 12th of June police officers Odem and Dick, who were members of the police force of Granite City, were notified there was trouble in the vicinity of the sewer ditch being constructed, and they say they understood a man had been shot. They received this notice about 2:15 in the afternoon and went on foot to where a large number of railroad tracks cross Pacific avenue, in the southwesterly part of Granite City. They had about a mile to travel to reach that point. The railroad tracks run north and south across Pacific avenue, which runs east and west. The sewer ditch is in the neighborhood of one-half mile south of Pacific avenue and runs east and west. At the west end of the sewer ditch is a levee along the Mississippi river, running in a general north and south direction. The territory within this square appears to be mostly vacant and

is variously spoken of as "commons," "field" and "dump." When the officers reached the place where the railroad tracks cross Pacific avenue defendants were pointed out to them as the persons who had done the shooting. It does not appear that the officers went together to the place of the alleged trouble or that they were together at the time defendants were pointed out to them as the parties who had been guilty of shooting someone. Officer Dick testified Odem was nearer the men than he was; that they were about 200 or 300 feet from Odem. Odem testified that when he saw them they were walking away from him; that he started to arrest them and hallooed to them to stop. They motioned to him, but he could not tell whether they motioned to him to stop or to come on. They continued to go away from him and he pulled his gun and fired a shot into the air. Defendants returned the shot and ran, the two officers pursuing them. A good many shots were fired by the defendants at Odem, who appears to have been nearest to defendants. Odem testified he emptied his gun and thought the defendants emptied theirs also. One shot hit the ground close enough to Odem to throw dirt on him and another cut a weed within a foot of his knee. Several shots struck the ground in front of him. Defendants ran south to the sewer ditch and crossed over on the south side of it, then turned west to the levee, crossed over the levee, then came back on or east of the levee, and continued south until they were arrested by the police of the village of Madison, at or near Newport. Odem testified that when he saw he would be unable to overtake and arrest defendants he went to a house where there was ·a telephone, near by, and notified the Madison police to be on the lookout, and they arrested defendants. No complaint or charge had been filed against defendants and no warrant had been issued for their arrest. While the police officers testified they were informed someone had been shot, and when they went to the place where they were told the trouble had oc-

curred defendants were pointed out to them as the guilty parties, they were not then doing any unlawful act, and there was no proof whatever on the trial that they had shot anyone or fired a gun or had been guilty of any criminal or unlawful conduct of any kind or nature. When the officers went to the neighborhood where they were informed trouble had occurred and where defendants were pointed out to them, defendants were from 100 to 200 yards from them, walking away from the place where the officers were. Odem called to them to stop and started toward them to arrest them. They did not stop but continued going away from the officers. He fired a shot in the air, whereupon defendants began shooting and running. Odem pursued them, firing at them until he emptied his gun, and as defendants ran they would turn and fire at Odem. It seems there were several men at or near the place when the chase began, and when Odem started toward defendants to arrest them and called to them to stop, some of the crowd started with the officers, and after the shooting began the crowd following defendants grew larger.

It is contended the evidence did not warrant the verdict of guilty of assault to commit murder. To sustain the charge of assault to commit murder, such facts must be proven that if death had resulted from the assault it would have been murder. It is insisted that no proof was made on the trial that any criminal offense had been committed; that the officer had no warrant for the arrest of defendants, and that if they had killed the officer the crime could not have been anything more than manslaughter. Malice aforethought, express or implied, is an essential element to constitute murder. It is implied where no considerable provocation appears or all the circumstances show an abandoned and malignant heart. It was not shown by testimony on the trial that there was any reason or cause for the arrest of defendants by Odem, which act he was attempting to do without a warrant. In *Rafferty* v. *People,* 69 Ill. 111,

and the same case in 72 Ill. 37, this court held that if a public officer is killed by a person whom he is attempting to illegally arrest without authority of law, the killing will be manslaughter, only, unless the evidence shows previous or express malice.

It is claimed by the People that peace officers may at common law arrest persons in their county without a warrant on reasonable suspicion of their having committed a felony, and it is argued that as Odem had on his policeman's uniform defendants knew his official character. No proof was made on the trial of any acts or conduct of defendants which justified suspecting them of having committed a felony. The arrest attempted in the *Rafferty case* was by a policeman in uniform. In this case it is not very clear that defendants saw and recognized that Odem had on a policeman's uniform. In *People* v. *Bissett,* 246 Ill. 516, the court said before the State could take advantage of the official character of an officer (who was in plain clothes in that case) for the purpose of characterizing as murder the act of killing him by a man he was attempting illegally to arrest, it was essential that it be shown, beyond reasonable doubt, that the slayer had knowledge of his official character and of his authority,—citing the *Rafferty case* and *Starr* v. *United States,* 153 U. S. 614.

We do not think the evidence in this record sufficient to sustain a conviction for the crime of assault to commit murder. No instruction was given that the jury might, if the evidence warranted it, find the defendants guilty of a lesser crime under the indictment. *Beckwith* v. *People,* 26 Ill. 500.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Mr. JUSTICE THOMPSON, dissenting.