## CHRISTOPHER RAFFERTY

*v.*

## THE PEOPLE OF THE STATE OF ILLINOIS.

1.  WARRANT—*issued in blank, a nullity.* Where a magistrate signs warrants in blank, and delivers the same to a police officer to be filled up with the names of persons to be arrested, as occasion may require, and the police officer fills up one of them for the arrest of an individual, without any charge under oath being first made, the warrant will be a nullity, as not issuing in the ordinary course of justice from a court or magistrate.

2.  HOMICIDE—*when manslaughter, where the killing takes place in resisting an arrest.* It is a general rule that, when persons have authority to arrest or imprison, and while using the proper means for that purpose, are resisted in so doing and killed, it will be murder in all who take part in such resistance. But if the process be defective in the form of it, as, if there be a mistake in the name of the person on whom it is to be executed, or if the name of such person, or of the officer, be inserted without authority, or after the issuing of the process, or if the officer exceed his authority, the killing of the officer in such a case, by the person sought to be arrested, will not be murder, but manslaughter only.

3.  Three things are to be attended to in matters of this kind,—the legality of the deceased's authority, the legality of the manner in which he executed it, and the defendant's knowledge of that authority; for if an officer be killed in attempting to execute a writ or warrant invalid on the face of it, or if issued with a blank in it, and the blank is afterwards filled up by one having no authority, or if issued with an insufficient description, or against a wrong person, or out of the district in which alone it could lawfully be executed, or if a private person interfere and act in a case where he has no authority by law to do so, or if the defendant have no knowledge of the officer's business, or of the intention with

which a private person interferes, and the officer or private person be resisted and killed, the killing will be manslaughter only.

4. SAME—*evidence as to the legality of process material.* Where a defendant. on an attempt to arrest him under a void warrant for an offense not committed in view of the officer holding the process, kills an assistant of the officer to prevent being arrested, the defendant on a trial for murder has the right to show in evidence the fact of the invalidity of the warrant, to enable the jury to determine whether the killing is murder or manslaughter only. If the process is shown-to be void, this will reduce the homicide to manslaughter, unless the proof shows express malice towards the deceased.

WRIT OF ERROR to the Circuit Court of Lake county; the Hon. ERASTUS S. WILLIAMS, Judge, presiding.

This was an indictment against Christopher Rafferty, for the murder of Patrick O'Meara, found by the grand jury of Cook county, and taken, by change of venue, to the circuit court of Lake county. The opinion of the court contains a statement of the facts of the case.

Mr. EDWARD A. SMALL, for the plaintiff in error.

Mr. JAMES K. EDSALL, Attorney General, and Mr. CHARLES H. REED, State's Attorney, for the People.

Mr. JUSTICE MCALLISTER delivered the opinion of the Court:

The plaintiff in error having been found guilty upon an indictment, for the murder of one Patrick O'Meara, and sentenced to suffer the penalty of death, has caused the evidence, together with the rulings of the court and exceptions taken, to be preserved in a bill of exceptions, and brought the record to this court, for review, upon writ of error.

Various errors have been assigned, among which is the exclusion of proper evidence, and overruling his motion for a new trial. We propose to consider but one question presented, and that is one vitally affecting the merits of the case, and which we can not disregard without overriding a

plain and well settled rule of law, based upon a foundation no less solid than the natural rights of personal liberty and security—rights held sacred by the common law and recognized and protected by constitutional enactments.

The record contains evidence tending to show that the homicide was committed by the prisoner in resisting the deceased, who was a policeman of the city of Chicago, whilst engaged in connection with another policeman, whom he was aiding, in the act of committing an illegal and wholly unjustifiable invasion of plaintiff's liberty, by attempting to seize his person and take him off to prison, without any authority in law so to do. The circumstances, which the evidence tends to prove, were briefly these : At a little after midnight of the night of the 4th, and in the early morning of the 5th of August, 1872, the prisoner was sitting quietly and peaceably by a table in a saloon, when O'Meara, the deceased, and another policeman of the name of Scanlan, came in. O'Meara immediately pointed the prisoner out to Scanlan. The prisoner upon seeing O'Meara addressed him in a friendly manner, asking him to take something to drink, or a cigar, which was declined. Scanlan then went directly up to the prisoner, tapped him on the shoulder, and told him he had a warrant for him. The prisoner demanded the reading of the warrant, which was done, and the prisoner apparently submitted to the arrest ; but immediately threatened to shoot the first man who should lay a hand upon him. O'Meara, who came with a slung shot hung to his wrist, stationed himself at the outer door to prevent prisoner's escape, while Scanlan kept himself in position to guard a back door. All this occurred in a brief space of time ; and while O'Meara, with a slung shot suspended from his wrist, was thus guarding the door which led into the street, the prisoner shot him with a pistol, inflicting a mortal wound. There is not the slightest pretense in the case that the prisoner had been accused or suspected of having committed any felony, or that he, at the time, was in the act of committing a misdemeanor

8—69TH ILL.

or even any violation of a city ordinance.   The facts appearing, from the tendency of the evidence, are that the homicide was committed while the deceased was assisting in the arrest of the prisoner under the circumstances stated.   No attempt was made by the State's Attorney, on the trial, to show that the prisoner had been charged with the commission of any felony, or to prove that either of the policemen in question had in their possession, at the time, any lawful writ or warrant authorizing the prisoner's arrest.   But the counsel for the prisoner caused to be produced and identified, the supposed warrant, which the policemen had, and upon which the arrest was made, and established, by undisputed evidence, that Police Sergeant Hood had in his drawer a number of blank summonses and warrants, which had been signed by police magistrate Banyon, and which the sergeant had been accustomed to fill up in the absence of the magistrate, and use, from time to time. as exigences might require. That from these blanks he, on Sunday, August 4, 1872, filled up the one in question, putting the prisoner's name into it, in the absence of the magistrate; and to avoid the appearance of having been issued on Sunday, it was dated the 5th of August.   This paper was delivered to Scanlan, and he and O'Meara proceeded, as the evidence clearly shows, to hunt for the prisoner all that Sunday night with the intention of arresting him on that pretended process, as soon as midnight was passed, if they could find him.   When the supposed warrant was introduced in evidence, and the testimony showing how it was brought into existence was given. the court, upon the motion of the State's Attorney, excluded the warrant and all evidence relating to it, from the jury, as incompetent; to which the prisoner's counsel excepted.

The supposed warrant, as filled out by the sergeant, was directed to any constable or policeman of the city of Chicago, commanding them to take the body of Christopher Rafferty and bring him forthwith before the magistrate unless special bail should be entered; and if such bail should be entered,

then to command Rafferty to appear before such magistrate
at eight o'clock a. m., on the 10th day of August, 1872, at
his office, etc., "to answer the complaint of the city of Chi-
cago in a plea of debt for a failure to pay said city a certain
demand, not exceeding one hundred dollars, for 'a violation
of an ordinance of said city entitled 'an ordinance for revis-
ing and consolidating the general ordinances of the city of
Chicago,' passed October 23, 1865, to-wit : for *committing
a breach of the peace, and making an improper noise and dis-
turbance in said city, or for using threatening or abusive language
towards another person,* tending to a breach of the peace, in
violation of section 29 of chapter 25 of said ordinances, and
hereof make due return as the law directs. Given under my
hand and seal this 5th day of August, 1872.

A. H. BANYON,

[SEAL]                                    *Justice of the Peace.*"

The sixth section of chapter eleven of the charter of Chi-
cago (Gary's Laws, p. 114) declares as follows: "In all
prosecutions for any violation of any ordinance, by-law, police
or other regulation, the first process shall be a summons,
*unless oath or affirmation be made for a warrant, as in other
cases.*" And by section 1 of chapter 33 of ordinances (Gary's
Laws 306) it is provided that the several members of the
police force "shall have power to arrest all persons in the city
*found in the act* of violating any law or ordinance, or aiding
and abetting in any such violation."

It is clear, beyond doubt, that there was not the slightest
authority in Scanlan and the deceased to arrest the prisoner,
unless it can be found in the supposed writ or warrant, which
the court excluded. And it can not be denied that the legal-
ity of the arrest of the prisoner was a material question in
determining the character of the homicide ; for it is a well
established rule, that where persons have authority to arrest
and are resisted and killed in the proper exercise of such
authority, the homicide is murder in all who take part in such
resistance. And on the other hand, it is equally well settled,

that where the arrest is illegal, the offense is reduced to man-slaughter. Foster, 270; Hale's P. C. 465.

If, therefore, it be conceded that the warrant was legal, then, inasmuch as the policemen had no authority to arrest the prisoner without it, the production of the warrant in evidence was necessary in order to a conviction for murder. But if it was, to all intents and purposes, illegal and void, then the supposed warrant, and the testimony showing its nullity, were competent and proper for the accused, in order to show that the character of the homicide was manslaughter and not murder.

We have seen, that, by the express provisions of the charter of Chicago, no process of the kind in question could have been lawfully issued by the magistrate himself, without an oath or affirmation made for the warrant as in other cases; and yet, we find blanks, signed by the magistrate, put into the hands of a sergeant of police, filled out by him and used as legal process with which to arrest the citizens of the State, with full knowledge, as we must presume, on the part of the magistrate and sergeant, that they were so put into use, without the required oath, and in violation of law. Such conduct is reprehensible in the highest degree, and it is a matter of no astonishment that such tragical results followed. But when so filled out, the paper was an absolute nullity. It did not issue in the ordinary course of justice, from a court or magistrate. It did not issue from the magistrate at all; because, when it went from his control, it contained no authority, express or implied, to arrest and imprison Rafferty or any body else.

The law on this subject is clear and explicit: "But if the process be defective in the frame of it, as, if there be a mistake in the name of the person on whom it is to be executed, *or if the name of such person* or of the officer *be inserted without authority,* or after the issuing of the process, or if the officer exceed his authority—the killing of the officer in such

case by the party would be manslaughter only." 2 Arch-bold's Cr. Pr. and Pl. 242.

"It is a general rule that, when persons have authority to arrest or imprison, and, using the proper means for that purpose, are resisted in so doing and killed, it will be murder in all who take part in such resistance." Foster, 270. But three things are to be attended to in matters of this kind: the legality of the deceased's authority, the legality of the manner in which he executed it, and the defendant's knowledge of that authority; for if an officer be killed in attempting to execute a writ or warrant invalid on the face of it, or if issued *with a blank in it,* and *the blank afterwards filled up;* or if issued with an insufficient description of the defendant, or against a wrong person, or out of the district in which alone it could be lawfully executed; or if a private person interfere and act in a case where he has no authority by law to do so; or if the defendant have no knowledge of the officer's business, or of the intention with which a private person interferes, and the officer or private person be resisted or killed, the killing will be manslaughter only." 1 Hale's P. C. 465. See also *Housin* v. *Barrow,* 6 Durnf. and East R. 122; *Rex* v. *Hood,* 1 Moody C. C. 81, 1 East P. C. 110, 111.

Roscoe, in his work on Criminal Evidence, 698, says: "If the process be defective in the frame of it, as, if there be a mistake in the name or addition of the party, or if *the name of a party,* or of the officer, *be inserted without authority and after the issuing of the process,* and the officer, in attempting to execute it, be killed, this is only manslaughter in the party whose liberty is invaded."

Such, undoubtedly, is the law, and the evidence excluded would bring the prisoner's case fully within it. His name was inserted in the warrant by the sergeant of police, after it had been delivered to him by the magistrate, and consequently without authority. These facts, if found by the jury, should determine the character of the homicide to be manslaughter, unless the proof showed express malice towards

the deceased. 3 Greenleaf Ev. p. 106, sec. 123 ; *Roberts* v. *The State*, 14 Missouri R. 138. No authority has been cited, and we hazard nothing in saying that none can be found which would justify the exclusion of this evidence under the circumstances of this case. The accused had the legal right to have it go to the jury, because it was material in deter- ·mining the character of the homicide. This was a question exclusively for the jury, and as to which we do not wish to be understood as expressing any opinion. For this error the judgment will be reversed and the cause remanded.

*Judgment reversed.*

Mr. JUSTICE SCOTT : I can not yield my assent to all the reasoning of the majority of the court.

It seems to me the rule announced may be liable to an ·improper construction. An officer is not bound, at his peril, .to judge whether the writ he is about to serve is, in fact, legal, or whether the magistrate, who issued it, was guilty ·of misconduct in not complying with all the provisions of the law. It would be requiring too much of him to so hold. If the opinion of the court can be construed into holding a contrary doctrine, I do not concur in it. The general rule is, the officer may rightfully execute, or assist in the execution of any process, regular on its face, without putting his life in jeopardy at the hands of offenders against the law. Any other rule would be unreasonable.

There can be no question, the law is, if a party in resisting an unlawful arrest commits a homicide, the crime will be manslaughter and not murder. It is always, however, a question of fact, to be found from the evidence.

In this view of the law it would have been proper, no doubt, for the court to have permitted the jury to consider the evidence tendered, however slight it might be, on the question whether the homicide was in fact committed in re- sisting an unlawful arrest.

There is no pretense the deceased was, himself, about to serve any process, and it may be the jury will find that he was not even assisting Scanlan to arrest the accused when the fatal wound was inflicted. If so the evidence will be immaterial.