# JOHN STEFFY

## *v.*

## THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Mt. Vernon October 31, 1889.*

1. CRIMINAL LAW—"*considerable provocation*"—*in what it may consist.* Mere words, however opprobrious, can not be said to constitute the "considerable provocation" contemplated by the statute relating to assaults to murder, and to inflict bodily harm. If, therefore, words used will not reduce a homicide from murder to manslaughter, they will not constitute such a provocation as to destroy the intent necessary to the commission of an assault with intent to murder.

2. SAME—*malice—being armed with a deadly weapon—as evidence of malice.* On the trial of one for an assault with intent to murder, the proof showed that there was a dispute between the defendant and the prosecuting witness (the person assaulted) concerning a house, near where the latter resided, and that the defendant came to the house of the prosecutor armed with a deadly weapon, there being no satisfactory reason given for his so going there, and no danger shown to his person or property. The parties got into an angry altercation, when the defendant fired his pistol at the prosecuting witness: *Held*, that the bare fact, unexplained, that the defendant was, without any excuse therefor, armed with a deadly weapon, was of itself a strong circumstance from which the jury might have found that he was actuated by malice.

3. BILL OF EXCEPTIONS—*when necessary—exceptions.* Exceptions to the ruling of the court can not be preserved in the record by the entries and recitals of the clerk. This can be done only by bill of exceptions. When no exception is taken to the order of the court overruling a party's motion for a new trial, he will be in no position to question the sufficiency of the evidence to sustain the verdict.

4. If no exceptions are taken, and preserved in a bill of exceptions, to the giving or refusing of instructions, the correctness of the rulings of the court thereon can not be questioned on error or appeal.

5. NEW TRIAL—*verdict against the evidence—in a criminal case.* To justify this court in reversing a judgment of conviction in a criminal case, on the ground that the evidence was insufficient, it must appear that the finding of the jury is not sustained by the evidence, or that it is palpably contrary to the decided weight of the evidence.

WRIT OF ERROR to the Circuit Court of Crawford county; the Hon. C. C. BOGGS, Judge, presiding.

Messrs. CALLAHAN, JONES & LOWE, and Messrs. PARKER & CROWLEY, for the plaintiff in error.

Mr. GEORGE HUNT, Attorney General, and Mr. E. E. NEWLIN, State's Attorney, for the People.

Mr. CHIEF JUSTICE SHOPE delivered the opinion of the Court:

John Steffy was indicted at the September term, 1888, of the Crawford circuit court, for an assault upon Sylvester Pinkstaff with intent to murder. The cause was tried at the March term, 1889, resulting in a verdict finding the defendant guilty as charged, and fixing his punishment at confinement in the penitentiary for one year. Motion for a new trial was overruled, and judgment on the verdict.

It is urged, first, as ground of reversal, that the verdict of the jury is contrary to the evidence. Whether the evidence warranted the verdict was a question of fact peculiarly within the province of the jury to determine, and great weight is to be given to their finding. Courts are reluctant to substitute their opinion for that of the jury upon controverted questions of fact. To justify this court in reversing on the ground that the evidence was insufficient, it must appear that the finding of the jury is not sustained by the evidence, or that it is palpably contrary to the decided weight of the evidence. (*Gainey* v. *The People,* 97 Ill. 270; *Hanrahan* v. *The People,* 91 id. 142; *Rogers* v. *The People,* 98 id. 581.) In the first case cited this court say: "It is only when this court is able to say, from a careful consideration of the whole of the testimony, that there is clearly reasonable and well-founded doubt of the guilt of the accused, that it will interfere on the ground the evidence does not support the verdict," citing *Rafferty* v. *The People,* 72 Ill. 37.

It appears that both Steffy and Pinkstaff claimed possession of a house, and that a dispute had existed between them for over a year before the alleged assault. On the 18th of August,

1888, Steffy went to the house of Pinkstaff, (not, however, the one in dispute,) and called Pinkstaff out, and informed him that he, Steffy, was going to nail up the house in dispute. After making some inquiries about the sashes to two of the windows, he told Pinkstaff to take his stove out of the house—that he was going to nail it up. The evidence tends to show that he had already nailed up the windows and doors. At the time he was talking to Pinkstaff, the defendant had a hatchet or hammer in his left hand, his coat hanging on his left arm, and his right hand under his coat, in which, he states, he had a revolver. Pinkstaff told the defendant he had better let the stove alone, and ordered him off his premises, for the reason, as he alleges, the defendant was trying to quarrel with him. The defendant at that time was near the gate leading to Pinkstaff's house, but as Pinkstaff came out, "backed out a piece down the lane in front of the house and stopped." Pinkstaff's wife came out also, and placed herself between the two men, and said to defendant, "Give up what you have got, John, and fight fair, if you must fight." The defendant replied, "May be I will." Witnesses for the People say that the defendant then drew his revolver, which is, however, denied by the defendant; that Pinkstaff stepped a little to one side, and picked up a small stick of stove-wood, and started towards the defendant. When he had got within about twenty-five feet of the defendant, the defendant commanded him to "halt." Pinkstaff, his wife, and Mrs. Landreth, who are all shown to have been present, testified that Pinkstaff did halt, but that the defendant, notwithstanding, immediately fired his revolver at Pinkstaff. This condition of affairs is denied by the defendant alone, who says that Pinkstaff continued to advance, and had approached within ten feet of him before he fired the shot. The evidence also tends to show that the defendant again drew up his pistol and pointed it at Pinkstaff, but, for some reason unexplained, did not fire. The testimony of Pinkstaff, in most of its material facts, is corroborated by that of his wife and Mrs. Landreth.

It can not be said that the verdict is clearly against the weight of the evidence. No satisfactory reason is shown why the defendant should go to the house of Pinkstaff armed with a deadly weapon, provoke a quarrel, and refuse to leave when ordered to do so. The bare fact, unexplained, that the defendant, without any excuse therefor, in a time of peace, and when menaced with no danger either to his person or property, was armed with a dangerous and deadly weapon, of itself was a strong circumstance from which the jury might be justified in finding the defendant was actuated by premeditated malice. It looks very much as if his visit was made with the purpose of having a difficulty with Pinkstaff, and that he prepared himself for any emergency that might arise. The evidence was, we think, sufficient to authorize the jury to so believe.

It is said that the jury were not justified in finding there was no considerable provocation for the assault. Mere words can not be said to constitute the considerable provocation contemplated by the statute. It has been held by this court, that no provocation by words only, however opprobrious, will so mitigate intentional killing as to reduce the homicide to manslaughter. (*Jackson* v. *The People*, 18 Ill. 269.) If, therefore, in this case, the words used by Pinkstaff would not have reduced the offense, if death had resulted from the assault, from murder to manslaughter, it follows, that such words can not constitute such provocation as would destroy the intent necessary to the commission of the crime charged. But aside from this view, the bill of exceptions fails to show any exception taken by the defendant to the ruling of the circuit court, either in giving, refusing or modifying instructions, or in overruling defendant's motion for a new trial, or his motion in arrest of judgment. It is true that the clerk recites in the record that exception was taken to the overruling of such motions ; but it has been so repeatedly held that exceptions to the rulings of the court can not be preserved in that way, that the citation of authority would seem unnecessary. Such ex-

ceptions, if taken, must be preserved in a bill of exceptions, if it is desired to have them made parts of the record. 'No exceptions having been taken to the order overruling the motion for a new trial, the plaintiff is in no position to question the sufficiency of the evidence to sustain the verdict.

It is also objected that the court erred in giving certain of the instructions asked on behalf of the People. As we have seen, no exceptions are preserved in this record, if any were taken, to the giving of the instructions complained of, or of any of them, and the defendant can not,. therefore, question their correctness on error. It may, however, properly be said, that we have examined the instructions, and, while some of them are faulty, we are of opinion that when the instructions given are considered together, there is no error of which the defendant can justly complain. ·

The judgment of the circuit court must be affirmed.

*Judgment affirmed.*