(No. 11562.—Judgment affirmed.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* TOM CAPELLO, Plaintiff in Error.

*Opinion filed February 20, 1918.*

1. CRIMINAL LAW—*verdict will not be set aside on the evidence unless there is a reasonable doubt of guilt.* A verdict of guilty in a criminal case will not be set aside, on appeal, as not warranted by the evidence unless the court can say that the evidence clearly indicates a reasonable doubt of the guilt of the defendant.

2. SAME—*what evidence is material on question of self-defense.* On the trial of the driver of a dray who killed a policeman by striking him on the head with a wagon stake after he had boarded the dray to examine its contents, evidence of bruises on the body of the deceased, claimed to have been caused by the defendant by kicking or stamping, and that the defendant said after the mortal blow was struck, "Now you will stay off," or "keep off," is material upon the question whether the defendant was afraid of losing his life or of great bodily harm and acted from the instinct of self-preservation.

3. SAME—*what evidence does not show policeman was attempting an illegal arrest when killed.* Where a person in anti-saloon territory borrows a dray and is driving from the railroad station with one of ten cases of beer consigned to him, when he meets a policeman, whom he kills by striking him on the head with a wagon stake after the officer had boarded the dray in disregard of the defendant's orders to keep off, the officer, although a trespasser, cannot be said to have been attempting an illegal arrest, where the evidence tends to show that he was merely investigating the contents of the dray.

4. SAME—*what evidence competent as tending to show policeman's object in getting upon a dray.* Upon the trial of a person who in anti-saloon territory killed a policeman by striking him with a stake from the dray he was driving, when the policeman, who had boarded the dray, was examining the case of beer the defendant was hauling, it is competent for the State's attorney to ask witnesses how many cases of beer had been shipped to the defendant, as bearing upon the question whether the policeman had ground for believing the defendant was engaged in the illegal sale of beer and had boarded the dray to conduct an investigation.

5. SAME—*when People are entitled to instruction that to constitute self-defense it must appear the deceased was the assailant.* Where the evidence for the People in a murder case is that the defendant was the assailant, the People have a right to an instruc-

tion containing the proposition that to constitute self-defense it should appear that the deceased was the assailant.

6. SAME—*instruction need not explain the meaning of striking a blow "in disregard of human life."* An instruction in a murder case advising the jury that if the defendant struck the blow which caused the death of the deceased, either with malice aforethought or with a total disregard of human life, as charged in the indictment, and that the deceased died from the effect of the blow, they should find the defendant guilty, cannot be objected to upon the ground that no instruction is given explaining to the jury when a blow is struck in disregard of human life.

7. SAME—*action of judge cannot be shown by affidavits.* What the trial judge does or what occurs in his presence must be shown by his own statement in the bill of exceptions and cannot be shown by affidavits which are not a part of the record.

CRAIG, J., dissenting.

WRIT OF ERROR to the Circuit Court of Franklin county; the Hon. W. N. BUTLER, Judge, presiding.

THOMAS H. CREIGHTON, B. W. POPE, R. E. SMITH, and W. P. SEEBER, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, ROY C. MARTIN, State's Attorney, and EDW. C. FITCH, for the People.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

On July 12, 1915, in the village of Sesser, in Franklin county, Tom Capello, the plaintiff in error, killed Robert Hill by striking him with a wagon stake, and was afterward convicted of murder in the circuit court of that county and sentenced to life imprisonment in the penitentiary. The record is in this court as a return to a writ of error.

In the argument for the plaintiff in error it is first contended that the verdict was not supported by the evidence, and therefore the trial court erred in refusing to set it aside and grant a new trial.

The village of Sesser was anti-saloon territory, and defendant, Tom Capello, was employed in a restaurant which

had formerly been a saloon. A shipment to the defendant of ten cases of beer was received at the railroad station in Sesser, and the defendant applied to J. E. Davis, who was in the transfer business in the village, to haul the beer from the station to the defendant's residence. Davis refused to haul the beer but loaned his team to the defendant for that purpose. The defendant went with the station agent to the car, but the car was full of other goods so that they only found one case, which the defendant took and said he would come back later and get the rest. The defendant put the case of beer on the front of the wagon, which had a platform on springs, with stakes set in sockets along the sides, and was drawn by two horses. The stakes were made of hardwood and were 1¾ inches by 2¾ inches in size and 40 inches long. The defendant drove the team north on Railroad street, and Robert Hill, a policeman, came out to the wagon and took hold of stakes to get on the wagon, when the defendant told him twice to "stay off" or "keep off." There was a dash at the front of the wagon and a seat immediately back of it, and the case of beer was behind the seat and the defendant was standing near it. Hill got on the wagon, and three witnesses for the People,—one of them a lumber dealer, another the owner of a feed mill and the third a farmer,—testified that Hill stooped down over the case of beer as though he were looking for the name on it or were going to lift the lid off; that the two were pushing each other, and the defendant drew a stake from a socket, and, holding it with one hand, struck Hill on the right side of the head; that Hill was stooping over at the time and was rising up and at the same time attempted to draw his revolver, when the defendant struck him again on the left side of the head, holding the wagon stake with both hands, and that Hill sank back on the wagon and the defendant either kicked him or stamped him twice and jumped off the wagon. There was evidence that when the defendant jumped off the wagon he said, "Now you will stay off,"

or "keep off." Another witness, engaged in the lumber business, who was at the lumber yard, did not see Hill get on the wagon, but hearing a voice saying, "Get off from here!" looked up and saw Hill in a stooping position, and as he was rising up the defendant struck him with the wagon stake on the left side of the head and then either jumped on him or kicked him and got off the wagon. A witness who was in the transfer business and was examined by the People testified that the defendant pushed Hill and Hill reached for his revolver, when the defendant got the stake and hit Hill over the head and Hill went down, and the defendant said, "Now I guess you will stay off," or "keep off." The front dash-board and seat prevented this witness from seeing what was on the wagon, but he said that Hill was in a stooping position when the defendant struck him, and in that respect testified the same as the other witnesses.

The killing was admitted but it was claimed to have been done in self-defense. The defendant testified that Hill attempted to get upon the wagon and he told him to keep off; that he got on the wagon and had a policeman's club in a sling on his wrist; that he took hold of the sling and started to pull it over his wrist to hit him; that the defendant then took hold of the stake, raised it up and said, "Don't you dare to hit me with that club!" that Hill then raised his pistol and said, "I will shoot you," and that as he came up with his pistol the defendant struck him with the stake; that Hill staggered back and fell down in the back of the wagon; that he looked at Hill a minute and then jumped off the wagon and that he did not kick or stamp him. His testimony was to the effect that when Hill raised his policeman's club to strike him he grabbed the stake from the socket and warned Hill not to strike him and that Hill then raised his pistol, and as the pistol was raised toward him he struck Hill with the wagon stake, holding it with both hands.

A witness who worked in the restaurant where the defendant was employed testified that he heard the defendant

say, "Get off," or "Stay off." He did not see Hill get on the wagon, but said that the defendant pushed Hill back and reached for and got a stake out of the wagon and struck Hill with it; that he could not see what Hill had until after the defendant left the wagon, and then Hill had a revolver in his hand, and that the defendant did not stamp or kick Hill. He only saw the defendant strike Hill once. A witness for the People had testified that the revolver was lying on the wagon, about two feet from Hill.

A woman who was boarding at Tonazzi's hotel testified that she was standing on the second-story porch of the hotel when she first saw the defendant and Hill talking; that the defendant was on the wagon and Hill was standing down by the wagon talking to him; that she was then called away, and when she came back Hill was on the wagon and was going toward the defendant, with his hand up, holding something bright; that it looked like silver but not so bright, and she thought it was a knife; that the sun was shining against it, and that the defendant grabbed a stake and struck one blow and Hill fell over, and that the defendant looked at Hill again and jumped off the wagon and ran and did not kick him, and that the defendant struck Hill, holding the stake with both hands. The revolver did not look like silver or a knife but was a dark, blued revolver and was not bright or shining, but Hill had on him a large silver policeman's star.

A child eleven years old, whose mother owned a restaurant, testified that Hill went out of her mother's restaurant into the street with a policeman's club in his hand and got on the wagon; that the defendant told him twice to get off; that Hill had something black in his hand, holding it out toward the defendant, and the defendant had a stake; that the defendant held the stake in his hand awhile, then struck with it and jumped off the wagon, and did not kick or stamp Hill; that Hill had a great big, bright, silver star on, and that she could not see the case of beer from where

she was, as the team was coming toward her and the high seat and dash prevented her seeing on the wagon.

A witness who was a coal miner testified that he saw Hill on the wagon; that the defendant tried to push him back off the wagon; that Hill had a policeman's club in his hand, and he saw him reach down toward his revolver but did not know whether he got it; that the dash and seat on the wagon, which he thought were about six feet above the ground, were between him and the men; that when Hill reached down the hand went out of his sight and he did not see what was done and did not see the pistol, and did not know whether Hill was leaning over toward the defendant when the defendant pulled the stake out.

The law has committed to the jury the determination of questions of fact which depend upon the credibility of witnesses, and the verdict of the jury will not be set aside on appeal as not warranted by the evidence unless the court can say that the evidence clearly indicates a reasonable doubt of the guilt of the defendant. (*Steffy* v. *People,* 130 Ill. 98; *McCoy* v. *People,* 175 id. 224; *Gilman* v. *People,* 178 id. 19; *Johnson* v. *People,* 202 id. 53; *People* v. *Horchler,* 231 id. 566; *People* v. *Grosenheider,* 266 id. 324.) If, from a consideration of all the evidence, there is clearly a reasonable and well founded doubt of the guilt of the accused the court will not hesitate to set aside the judgment. But it is manifest that this is not such a case. Judged by the record, alone, the verdict was the necessary result of the evidence. There were fractures on both sides of Hill's skull, the one on the right running from near the top of the head down toward the ear, and the one on the left side extending from the forehead back to the base of the skull. On the breast-bone there was a bruise and on the ninth rib there was a discoloration, both of which appeared to have been caused by violence. The bruises on the body were not of much importance, but both the bruises and the fact that the defendant said when he jumped off the wagon, "Now you will stay

off," or "keep off," were material upon the question whether
the defendant was afraid of losing his life or of great bod-
ily harm and acted from the instinct of self-preservation.
The defendant's account of the transaction was not in har-
mony with that of his own witnesses. One of them was
evidently mistaken in her testimony that Hill was holding
out something very bright, on which the sun was shining,
which she thought was a knife, while it is an unquestioned
fact that the revolver was blued steel. That witness also
said that she first saw the defendant and Hill when Hill
was on the ground and they were talking with each other,
while the defendant said he had no talk with Hill; that
when he told him to keep off he made no reply. The child
said that she saw Hill have the "billy" in his hand as he
went down the street and saw him on the wagon holding
out something black in his hand, and the defendant then
pulled the stake from the wagon and held it up a while and
then struck Hill with it, while the defendant's testimony
was that it all happened in an instant. Hill was a trespasser
on the wagon, but the circumstances would not permit of
an inference that he was attempting an illegal arrest of the
defendant, so that the rule of *Rafferty* v. *People,* 69 Ill.
111, does not apply. The defendant had received a ship-
ment of ten cases of beer which he proposed taking to his
own home for his personal use, and it would be quite natu-
ral for a policeman, charged with the enforcement of the
law, to conclude that the supply so exceeded the require-
ments of personal use as to justify an investigation. At
any rate, there was no evidence tending in any degree to
prove that when Hill got on the wagon he intended any
personal violence to the defendant but only intended to
examine the case of beer, and the defendant had no right
to kill him to prevent a trespass. (*Davison* v. *People,* 90
Ill. 221; *Roberts* v. *People,* 226 id. 296; *People* v. *Hubert,*
251 id. 514.) There was the cogent evidence of a bruise
on the breast-bone and a discoloration on the ninth rib,

which appeared to have been caused by violence, and corroborated the evidence of witnesses that defendant kicked or stamped Hill twice after fracturing his skull, when Hill was lying on the floor of the wagon, and the undisputed fact that the defendant said when he jumped off of the wagon, "Now you will stay off," or "keep off," which show that the defendant was actuated by a different motive from saving his own life or preventing great bodily harm to himself.

The court sustained an objection to testimony offered by the defendant concerning what he said in a conversation about which witnesses for the People had testified, but the court of his own motion changed the ruling and admitted the testimony, so that, whether the first ruling was right or wrong, defendant had the benefit of the testimony.

The stake was admitted in evidence over the objection of the defendant, but it was sufficiently identified to be admissible in evidence.

The People were permitted to ask witnesses as to the quantity of beer shipped to defendant, and this is alleged as error, but the testimony was competent on the question whether Hill had reason to believe that the defendant was engaged in the illegal sale of beer and whether that belief was the cause of his getting on the wagon. .

Nearly all of the instructions given at the instance of the People are complained of, but there is no substantial objection to any of them. Several of them gave the law. concerning homicide in the language of the statute, and instruction 7, which is particularly objected to, stated the rule declared by section 149 of the Criminal Code, concerning self-defense. The latter part of that section, requiring it to appear that the person killed was the assailant or that the slayer had really and in good faith endeavored to decline any further struggle before the mortal blow was given, was not strictly applicable to the facts of this case, but there was no inference from it that the defendant was the assailant. The evidence for the People was that the defendant

was the assailant, and the People had a right to an instruction that to constitute self-defense it should appear that Hill was the assailant.

Instruction 9 is objected to because it advises the jury that if the defendant struck the blow which caused the death of Hill, either with malice aforethought or with a total disregard of human life, as charged in the indictment, and that Hill died from the effect of the blow, they should find the defendant guilty, and the objection is that no instruction was given explaining to the jury when a blow is struck in disregard of human life, which the jury would not understand without an explanation. We cannot attribute such a degree of ignorance to jurors in possession of their natural faculties, of sound judgment, well informed and who understand the English language, which are among the statutory requirements for service as jurors. There was no instruction which ignored the doctrine of apparent danger, but that doctrine was included in repeated statements of the law, and instruction 12 given at the request of the People was more liberal to the defendant than the law, because it included the element of danger to the property of the defendant, which was a case of beer and not his dwelling house.

The court refused instructions numbered 19 to 25, inclusive, but everything included in them proper and material to be given to the jury was covered by other instructions. It was the claim of the defendant that he had the right to transfer beer on the streets of the village and any attempt on the part of Hill to interfere was unlawful and would make him a trespasser, and the 19th and 25th instructions refused stated the law as claimed, but the jury were plainly instructed that the defendant had the right to purchase beer for his own use and to have the same shipped to him, and that Hill had no right or authority, either in his capacity of private citizen or as an officer of the village, to hinder or prevent the defendant from receiving beer so purchased and

shipped to him and transporting the same along the public streets.

The court gave six instructions stating at length and in various forms the doctrine of self-defense and advising the jury that if they had a reasonable doubt whether the blow was given in necessary or apparently necessary self-defense they must acquit the defendant. Instruction 3 given for the People is as follows:

"The court instructs the jury, as a matter of law, that when a man is killed by another the person killed is deemed to have been in peace of the people, unless it appears from the evidence that at the time of such killing the person killed has done or is doing some act by which he had forfeited his right to live at the hands of his slayer."

An instruction somewhat similar was one ground for reversing the judgment in *People* v. *Blevins,* 251 Ill. 381, because it assumed facts which were in dispute and not on the ground that the definition given was wrong. The allegation that the victim of the homicide was in the peace of the people is not and never was necessary. (2 Bishop on Crim. Proc. sec. 509.) The language of the instruction was objectionable, but in view of all the other instructions given which defined at great length the doctrine of self-defense and gave the defendant every rule of law that could be of any benefit to him, the judgment, which was sustained by the evidence, should not be reversed on account of it.

On the motion for a new trial the defendant presented two affidavits, sworn to by himself, that during the closing argument the presiding judge left the court room and another judge of the court presided during his absence; that the judge permitted the jury to take to the jury room the wagon stake admitted in evidence, and that in the opening statement the attorney for the People told what a witness who was not in the county would testify to if they secured his attendance. There was an affidavit for the People that the judge was absent only two or three minutes in a case of

absolute necessity, but neither affidavit is a part of the record. What the judge does or what occurs in his presence must be shown by his own statement in the bill of exceptions. He may disregard affidavits because he knows them to be false, and under no circumstances can his conduct be proved in that way. *Mayes* v. *People,* 106 Ill. 306; *Peyton* v. *Village of Morgan Park,* 172 id. 102; *Dreyer* v. *People,* 188 id. 40; *Christie* v. *People,* 206 id. 337; *Gallagher* v. *People,* 211 id. 158.

The judgment being well supported by the evidence and no material errors having occurred upon the trial, the judgment is affirmed.                                *Judgment affirmed.*

Mr. JUSTICE CRAIG, dissenting:

I do not concur in the foregoing opinion. The testimony of the plaintiff in error was corroborated in its essential particulars by four other witnesses who testified in his behalf and by one of the witnesses for the People. The only material difference between the testimony of the plaintiff in error and that of four of the witnesses for the People is whether he struck the deceased more than once or kicked or stamped him after he struck him with the wagon stake, and in those particulars the testimony of the plaintiff in error is supported by the greater number of witnesses, and, so far as can be judged from the record, they are of equal credibility and were nearer and had a better opportunity of witnessing the occurrence than those who testified differently. From the testimony of the physician who treated the deceased the fractures of his head might have been caused by one blow, and it appears that in falling he struck his head against the stakes on the rear of the dray. The bruises on his body were not considered of any importance. What the plaintiff in error said under the excitement of the moment as he left the dray should not be taken, under the circumstances, as showing his intent.

Plaintiff in error had had no previous trouble with the deceased, had no ill-feeling toward him, and up to the time of the encounter they had been friends. The question is whether or not, under all the circumstances as shown by the evidence, plaintiff in error is guilty of the crime of murder, as claimed by counsel for the People. There is nothing in the evidence to show express malice on the part of the plaintiff in error, and the question narrows to whether malice can be implied under the circumstances so as to make the homicide murder. Plaintiff in error was peacefully pursuing his way to his home. He had the lawful right to receive the beer at the railroad station, and it was his property and lawfully in his possession. (*City of Jacksonville* v. *Chicago and Alton Railroad Co.* 274 Ill. 152; *Town of Cortland* v. *Larson,* 273 id. 602, and cases cited.) He had violated no law, and was not engaged, at the time, in the violation of any law or ordinance of the village so far as shown or claimed, and the deceased had no warrant for his arrest or any reason for arresting him or interfering with him in any way. The only theory on which malice can be implied is that the deceased was a police officer and was resisted and killed by the plaintiff in error while in the performance of his lawful duties. Where an officer has authority to arrest and is resisted and killed in the proper exercise of such authority the homicide is murder, but where the arrest is illegal the offense is reduced to manslaughter. (*Rafferty* v. *People,* 69 Ill. 111; Wharton on Crim. Law,—11th ed.—secs. 849, 850.) Whether homicide in any case is murder, manslaughter or justifiable homicide depends on the facts and circumstances of such case. In the case at bar. Hill not only persisted in climbing on the dray after being warned to keep off, but it is clear from the evidence that he attempted to accomplish whatever purpose he had in mind by the use of the deadly weapons, the billy and the revolver, with which he was armed. If he had any reason for arresting the plaintiff in error or exercising his au-

thority as an officer he did not state what it was and none appears from the evidence nor is any satisfactory reason given by counsel for the People. It appears from the evidence that the plaintiff in error was unarmed and had made no preparation for any encounter. The wagon stake he used was picked up by chance and on the impulse of the moment. The whole affair from the time Hill started to climb on the dray until he was struck by the plaintiff in error took place in the space of a few seconds, and these circumstances must be taken into consideration on the question of intent and whether malice was shown on the part of the plaintiff in error, to make the homicide murder.

The theory of counsel for the People that Hill climbed on the dray merely to look at the case of beer and that he was struck by plaintiff in error while stooping over it and drew his revolver while plaintiff in error was in the act of striking him with the stake is manifestly unsound and the evidence in support of that theory is unreasonable. He could not have looked up and have drawn his revolver from his holster while the wagon stake was descending on his head. It would seem that he reached for his revolver and started to draw it from its holster before the plaintiff in error struck him with the wagon stake. Furthermore, if his purpose had been merely to examine the case of beer he should have called upon the plaintiff in error to stop the dray, and he would have been in a better position to examine it while standing on the ground. It was unnecessary for him to climb on a fast moving dray, brandishing his club and drawing his revolver. It is conceded in the opinion that in so doing he was a trespasser, but he was something more than a mere trespasser. While it is true that the plaintiff in error had no right to kill him to prevent a trespass, in the cases cited the circumstances were widely different from those in the case at bar. In *Davison* v. *People* the killing was done with a revolver, with which the accused had armed himself previous to the encounter. In *Roberts*

v. *People* the accused used a knife.    In *People* v. *Hubert* the conviction was for manslaughter.    In none of these cases was a trespass clearly shown, much less admitted.    In the case at bar there was not only a trespass or an unlawful and uncalled for interference with the plaintiff in error by the person killed, but also an assault with deadly weapons.    It is stated in the opinion that "there was no evidence tending in any degree to prove that when Hill got on the wagon he intended any personal violence to the defendant but only intended to examine the case of beer."    It is difficult to imagine what stronger evidence there could be than the actions of the deceased, who, after being warned to keep off the dray, persisted in forcing his way thereon, with a billy in one hand and a revolver in the other and threatening to shoot an unarmed man who was peaceably attending to his own business.    If such actions are not sufficient to excite the fears of a reasonable person and raise a well founded apprehension of grave bodily harm then there never could be a case where self-defense could be proved.

Instruction No. 3 might be proper in a case where the evidence showed that the homicide was deliberate and intentional and where the accused had deliberately taken human life.    But in this case it was improper and misleading, as the jury could infer from the instruction that the plaintiff in error deliberately struck the deceased with the intention and purpose of killing him after deliberately weighing the consequences of such act, and would not be justified in so doing unless it appeared from the evidence that the deceased had committed some criminal act by which he had forfeited his right to live.    It was not necessary that the deceased should have gone so far as to forfeit his right to live in order to justify the resistance and striking by the plaintiff in error under the circumstances shown by the evidence in this case.

The objection to most of the instructions given on behalf of the People was that they were improper as applied

to the facts shown in evidence, and I think the objections were well taken.

Counsel for the People were permitted to ask witnesses where the plaintiff in error got the beer, how much he had shipped to him, etc. This was improper. It was not claimed that plaintiff in error was violating any law or that he had no right to get the beer or have it in his possession. Such evidence did not tend to prove any issue in the case, and the only object of such evidence would be to give the impression that he was engaged in unlawfully receiving or handling intoxicating liquor and prejudice the jury against him.

The statement by one of the attorneys for the People that it was expected a witness would be produced who would testify that plaintiff in error had stated before the difficulty that he intended to kill Hill was prejudicial and should not have been made. At the time it was made the case was being tried. Counsel for the People knew, or were supposed to know at that time, what they could prove and the names of the witnesses by whom the proof would be made. Moreover, plaintiff in error was entitled to know, before the trial, who the witnesses for the prosecution were. Plaintiff in error and his counsel had not been notified that any such witness would testify and no such witness was produced on the trial. There was no excuse for such a statement, and I cannot think that counsel for the People, with his knowledge of criminal law, made the statement in good faith. As stated by this court in *People* v. *McCombie,* 274 Ill. 600, the prosecuting attorney goes beyond his duty when he seeks to secure a verdict by known unfair arguments.

I do not think that under the evidence the plaintiff in error was guilty of murder, and the judgment should have been reversed because of prejudicial error.