(No. 31335.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN MATHEWS, Plaintiff in Error.

*Opinion filed March 22, 1950—Rehearing denied May 15, 1950.*

36

GEORGE W. SPRENGER, of Peoria, for plaintiff in error.

IVAN A. ELLIOTT, Attorney General, of Springfield, and BEN C. LEIKEN, State's Attorney, of Eureka, (HARRY L. PATE, of Tuscola, of counsel,) for the People.

Mr. CHIEF JUSTICE THOMPSON delivered the opinion of the court:

Plaintiff in error, John Mathews, with Gilbert Peterson and James Davis, was indicted in the circuit court of Woodford County, at the April term, 1949, for the crime of burglary and larceny. The indictment consisted of two counts, the first charging breaking and entering and the second entering without force. Pleas of not guilty were entered, but on the trial Peterson and Davis entered pleas of guilty. The jury found plaintiff in error guilty and, after motions in arrest of judgment and for new trial were overruled, he was sentenced to the Illinois State Penitentiary for a term of from ten to twelve years.

Errors assigned by which a reversal of the judgment is sought are: (1) The searches of plaintiff in error's home were illegal and in violation of his constitutional rights; (2) the trial court erred in denying plaintiff in error's motion to suppress evidence obtained by reason of illegal searches of his home; (3) the testimony of accomplices was obtained under promise or hope of reward and they deceived the jury in their testimony, such testimony not being corroborated; (4) plaintiff in error was not proved

guilty beyond a reasonable doubt by legal competent evidence, and (5) instructions five and nine, given on behalf of the People, were erroneous and prejudicial and misled the jury.

The record discloses that plaintiff in error, before the trial, filed a motion to suppress evidence, alleging that his home was entered without his consent and against his will by officers who searched the premises and seized two electric motors and an electric drill. On the motion to suppress, a hearing was had as to whether Mathews gave his consent to the search of his home. The People's evidence on the question consists of testimony of officers as to certain conversation in which he allegedly consented to the search.

James Elam, a deputy sheriff, testified that he asked plaintiff in error if he cared if they searched his home and he said, "he didn't care, he didn't have nothing to hide." Sheriff Andre, of Schuyler County, testified he was present and that plaintiff in error said, "You don't need no search warrant. I have nothing to hide out there." It is undisputed that Elam, Andre, one Watkins and Ruth Mathews, plaintiff in error's wife, then went to Mathew's home and a search was made on April 23, 1949. The officers testified they found the two motors and the drill in the kitchen, took their serial numbers and then left the house. Plaintiff in error's wife denied that the motors and drill were in the kitchen at that time. Sheriff Lindeen of Fulton County testified that on the afternoon of April 25, 1949, in the course of a conversation with plaintiff in error in the sheriff's office, he asked him if he cared if the officers searched his premises and that plaintiff in error said "no, he had nothing to hide." Two officers testified they were present and they corroborate sheriff Lindeen's testimony. Later that afternoon, Elam, with two other officers and one Oltman, whose store was burglarized, went to the home of plaintiff in error where they were admitted by plaintiff in error's sister-in-law, and Oltman identified the motors

and drill and they were seized. The trial court ruled that Mathews consented· to the search and admitted information obtained by the search,·but suppressed the articles seized.

On the trial before the jury the People established the burglary of Oltman's store and the larceny of the motors and drill as having occurred about 1:00 A.M. on the morning of April 18, 1949. The People's evidence of the crime consisted of the testimony of Peterson and Davis, codefendants, who testified, in substance, that on the evening of April 17, 1949, they went in Peterson's station wagon to the home of Mathews, picked him up and went to Havana to a tavern where they stayed until about 11:30· P.M.; that the three of them then drove to· Benson, where they burglarized Oltman's store at about 1:00 A.M., all three participating in loading merchandise from the store into the station wagon; that they then drove to Canton, where the station wagon and loot were turned over to Mathews with the understanding that he would dispose of the stolen goods; that they met Mathews again in Canton at about 6:30 P.M. and he gave them their share of the proceeds from the stolen property.

Mathews, his wife and four other witnesses gave testimony tending to show Mathews was in his home on this date, working on a public-address system belonging to one of the witnesses. He denied all knowledge of the motors and his wife denied they were in her kitchen on the 23rd, and denied the officers found them there on that date.

As to the first contention, plaintiff in error urges that the evidence was obtained through violation of his constitutional rights and therefore should have been wholly suppressed, and cites *People* v. *Humphreys,* 353 Ill. 340; *People ex rel. Miller* v. *Hotz,* 327 Ill. 433, and *People* v. *Castree,* 311 Ill. 392. There can be no doubt about the principle of law announced in these cases. However, the controversy seems to be not of the validity of the search warrant, but hinges on the contention by the People that

plaintiff in error waived his constitutional rights and consented to the search. The evidence introduced on the hearing on the motion to suppress is in conflict. Deputy sheriff Elam gave testimony tending to prove that on April 23 he asked plaintiff in error if he cared if Elam searched his house, that plaintiff in error replied that he did not care, to go ahead, he had nothing to hide. This was corroborated by Sheriff Andre, who testified that plaintiff in error said, "You don't need no search warrant. I have nothing to hide out there." This is denied by both plaintiff in error and his wife. It is undisputed, however, that on that date plaintiff in error's wife, Ruth Mathews, accompanied the officers to the home with the knowledge of her husband, and that she opened the door to admit them.

In the case of *People* v. *Wetherington,* 348 Ill. 310, officers armed with a search warrant searched a car and seized certain whiskey. On a motion to suppress, the defendant there attacked the validity of the warrant. The People introduced testimony that when the officers approached the car and told defendant they had a search warrant, he replied, "You don't need any search warrant; go ahead and search; I have some whiskey in my car." This was denied by the defendant. The trial court held that the defendant had consented to the search and admitted the evidence. We upheld this ruling as being justified by the evidence. It was further held that, since consent was given, no constitutional rights were violated by search and seizure, regardless of whether the officers had a valid search warrant. We held, in the case of *People* v. *Reid,* 336 Ill. 421, that where the evidence is in direct conflict on the question of consent to search, it is for the trial court to determine which witnesses are telling the truth. In *People* v. *McDonald,* 365 Ill. 233, there was a conflict in evidence on the question of consent to search, and we held it was for the trial court to determine the credit to be given the witnesses. We further held that one who consents to a search

of his property waives his constitutional rights subsequently to complain that the search and seizure were unlawful. To the same effect is *People* v. *Levy*, 370 Ill. 82.

The evidence in the instant case on the question of consent is in irreconcilable conflict, and under the cases cited above it was within the province of the trial court to determine which witnesses were telling the truth. The testimony of the officers is supported by the undisputed fact that Ruth Mathews accompanied them to the house and admitted them without protest. There was sufficient evidence from which the trial court could find that plaintiff in error consented to the search of his home. As to the subsequent search and seizure on April 25, the testimony of the officers is that plaintiff in error again consented, which was denied by plaintiff in error, and this again presented the question to the court as to who was telling the truth, there being sufficient evidence to justify the finding that consent was given. It is well settled that one who consents to a search of his property waives his constitutional right to complain that the search and seizure were unlawful. (*People* v. *Schmoll*, 383 Ill. 280; *People* v. *McDonald*, 365 Ill. 233; *People* v. *Mizzano*, 360 Ill. 446.) In the instant case, the trial court suppressed the articles seized, but admitted information obtained by the search. The propriety of excluding the seized articles is not contested here, was not prejudicial to the plaintiff in error and is not necessary in this respect for a decision. The court having found that the searches were consented to, it was not improper to admit information gained by the officers thereby.

It is next contended by plaintiff in error that the testimony of accomplices does not support his conviction, that their testimony was induced by promise of reward. We find nothing in the record to support this contention although both were cross-examined at great length upon that question.

Plaintiff in error also urges that one of the accomplices was not sentenced on his plea of guilty until after he had

testified in the case, and then received probation. Plaintiff in error also urges the fact of record that Davis, one of the accomplices, had twice previously been convicted and served terms in the penitentiary for felonies. To support the contentions plaintiff in error relies on the rule that testimony of accomplices should be received with caution, and cites in support of his position the case of *People* v. *Temple,* 295 Ill. 463. In that case the conviction rested solely on testimony of an accomplice and the jury was not instructed relative to the testimony of an accomplice. There the surrounding circumstances were strongly indicative that the accomplice had been induced to testify as he did by promise of immunity. Differentiating, we find that in the case here part of the loot was found in the home of plaintiff in error. We find from the record in the instant case that the trial court fully instructed the jury in regard to the testimony of an accomplice and the weight to be given. It is unnecessary to analyze further the many cases both for the People and plaintiff in error on this question. The cases are easily differentiated and after careful examination we find the cases on which plaintiff in error relies are not controlling. It will be observed the testimony of the two accomplices, while denied, is not impeached, and is corroborated by the discovery of part of the loot in the home of plaintiff in error. It is conceded the testimony of an accomplice should be received with caution, viewed with suspicion and acted on only after careful consideration. However, we have held in many cases that such testimony is competent and is sufficient to support a conviction if it is such as to convince the jury beyond a reasonable doubt. (*People* v. *Flaherty,* 396 Ill. 304; *People* v. *Rudnicki,* 394 Ill. 351; *People* v. *Meisenhelter,* 381 Ill. 378.) In the instant case the testimony of the accomplices contains no material discrepancies and is corroborated in many instances. The alibi testimony introduced by plaintiff in error is in irreconcilable conflict with that of the accomplices. In such a case the

question of the weight and credibility of conflicting evidence is properly for the jury. *People* v. *Potts,* 403 Ill. 398; *People* v. *Bote,* 379 Ill. 245.

Plaintiff in error makes the contention that on the whole evidence he was not proved guilty beyond a reasonable doubt, and on this contention he again urges error in the admission of evidence pertaining to information obtained on the search of his home. Since this evidence was properly admitted, as heretofore pointed out, it was properly considered by the jury. In support of the testimony of the People's witnesses, part of the loot taken was found in plaintiff in error's house. The only explanation offered by plaintiff in error is a denial that the motors and drill were there, all of which was properly submitted to the jury. On the basis of such evidence, the weight of the evidence and the credibility of the witnesses are questions for the jury to determine, and this court will not substitute its judgment for that of the jury on those questions. *People* v. *Switalski,* 394 Ill. 530; *People* v. *Orlando,* 380 Ill. 107.

This court will not reverse a judgment of conviction on the ground that the evidence is insufficient to sustain the finding of guilt, unless there is clearly a reasonable and well-founded doubt of the guilt of the accused and the verdict is found to be palpably contrary to the weight of the evidence. (*People* v. *Booker,* 378 Ill. 334; *People* v. *Angelica,* 358 Ill. 621; *People* v. *Kidd,* 357 Ill. 133.) Upon the review of the record in a criminal case, if it appears that there is clearly a reasonable and well-founded doubt of the guilt of the accused the court will set aside the judgment notwithstanding the conclusion of the jury and the trial court, but the law has committed to the jury the determination of questions of fact, and where the decision depends upon the credibility of witnesses and the finding of the jury is endorsed by the trial court a judgment of conviction will not be reversed as not warranted by the evidence unless the court can say that the evidence clearly

indicates a reasonable doubt of guilt. (*People* v. *Grove*, 284 Ill. 429; *Steffy* v. *People*, 130 Ill. 98; *People* v. *Capello*, 282 Ill. 542; *People* v. *Grosenheider*, 266 Ill. 324.) Applying these rules, we are of the opinion the verdict and judgment should not be set aside on the ground that a reasonable and well-founded doubt of the guilt of the defendant appears from the record.

Plaintiff in error objects to the giving of instruction No. 5 on the part of the People on reasonable doubt, and contends the instruction should not have been given. This form of instruction has been approved in the case of *Spies* v. *People*, 122 Ill. 1, *People* v. *Tielke*, 259 Ill. 88, and a number of other cases. While we have held it is improper to give instructions on an elaboration of reasonable doubt, and have pointed out that the term needs no definition, it was not prejudicial in the form which was given in the instant case.

It is next contended that instruction No. 9, given by the court on behalf of the People, was erroneous because the possession of the alleged stolen property by plaintiff in error was not recent, being seven days after the alleged burglary. The instruction was as follows: "The Court instructs the jury that the recent and unexplained possession of stolen property by the defendant, if the evidence so shows, tends to establish his guilt, and is sufficient, of itself, to authorize a conviction unless the inference of guilt thereby raised is overcome by other facts and circumstances in evidence, so as to raise in the minds of the jury a reasonable doubt of such guilt."

This instruction was approved in the case of *People* v. *Surace*, 295 Ill. 604. It is true that in the case of *People* v. *Bullion*, 299 Ill. 208, we held the possession must be so recent as to indicate that the possessor must have taken the property, and where it is so remote in time as to have given fair opportunity to the thief to dispose of the goods and to the defendant to acquire them honestly, possession is slight,

if any, evidence of guilt; but we succinctly pointed out in that case that the weight is a question of fact for the consideration of the jury and not to be determined as a question of law by an instruction that the evidence is sufficient to convict. The instruction was not improper under the facts and circumstances of this case and the weight was a question of fact for the consideration of the jury.

We have examined this record carefully, and, as we have heretofore pointed out, we are not of the opinion the verdict and judgment should be set aside on the ground that a reasonable and well-founded doubt of the guilt of the defendant appears from the record. The judgment is therefore affirmed.

*Judgment affirmed.*