(No. 20869.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* DEWEY E. WETHERINGTON, Plaintiff in Error.

*Opinion filed April 23, 1932.*

DURFEE & HOLMES, (GROVER E. HOLMES, of counsel,) for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, ROY R. HELM, State's Attorney, and A. N. TOLLIVER, for the People.

Mr. CHIEF JUSTICE STONE delivered the opinion of the court:

This cause is here on writ of error to review the judgment of the circuit court of Massac county entered against plaintiff in error on an indictment charging a second violation of the Prohibition act. He was sentenced to the penitentiary. He brings the cause here, assigning as error the

refusal of the court to quash a search warrant and suppress certain exhibits offered as evidence and errors in ruling on admissibility of evidence and instructions to the jury.

The undisputed evidence in the record is that on September 10, 1930, the sheriff, Fred Risinger, received information causing him to believe that plaintiff in error would on that evening go to a place known as "The Pond," on the Unionville road, for the purpose of securing a quantity of whisky. The sheriff thereupon signed and swore to a complaint for a search warrant before justice of the peace I. A. Sturgis. The warrant was issued, and the sheriff, together with George Krueger, a deputy sheriff, started out looking for plaintiff in error at about 7:30 in the evening. They went to the Unionville road at the point of its intersection with the Brookport road and after waiting a few minutes saw plaintiff in error coming down the Unionville road. He turned onto the Brookport road, driving a small car at about thirty-five or forty miles per hour. The officers pursued and overtook him. They found in the car a paper-board carton containing twelve half-gallon fruit jars of "white mule corn whisky," and on the floor of the car, in front of the seat, three more half-gallon fruit jars of this liquor. The latter were in a "tow-sack." On the seat of the automobile was a .45 automatic loaded pistol and defendant had in his possession an extra magazine of cartridges. He was arrested and taken to the justice of the peace, Sturgis, where a complaint was filed against him.

The facts in dispute concern the conversation which took place between these officers and plaintiff in error at the time of and after his arrest. Both Risinger and Krueger testified that when they overtook plaintiff in error they told him to stop; that the sheriff informed him that he had a search warrant for his car and would give him a copy of it or read it to him, and that defendant replied: "You don't need any search warrant; go ahead and search; I have some whisky in the car." They testified that the automobile in

which plaintiff in error was riding was a model "T" Ford coupe; that when the officers stopped him he got out, leaving the door open, and that the liquor could be readily seen. The officers testified that plaintiff in error told them he was not an officer but that he had a right to haul the whisky, and that he would not tell them who gave him permission to do so, where he got the whisky or where he was taking it. Plaintiff in error testified as to this matter that the sheriff told him: " 'I have a search warrant for your car,' and I said, 'That's all right; if you have, go ahead and search the car,' and he said, 'I've got it all right,' and I said, 'Go ahead and search it,' and furthermore said, 'If liquor is what you are looking for, (and I suppose it is,) look there in the front seat and you will find the liquor; at least that is what I take it to be—liquor.' " He also testified that he told the officers where he got the whisky, and that when asked what right he had to have it, he told them that he was deputized by Covington, a constable, and sent up there to locate a still. He further testified that when taken to Metropolis he was first taken to the State's attorney's house and then to the office of Sturgis, the justice of the peace. He testified that the State's attorney asked him what right he had to have the liquor, and that he told him he was not an officer but that he was deputized and sent up there. In this he is contradicted by Risinger, Krueger and Sturgis, all of whom testified that he did not state in their presence where he got the whisky nor to whom he was taking it, and that Covington's name was not mentioned.

There was offered on behalf of the defense the testimony of one Charles Bridges, who testified that on the night of September 10 he was awakened by hearing voices outside his house, and that he saw Ivy Covington and another man whom he did not know. On objection of the People the court refused to permit the witness to testify to conversations which occurred between him and these men,

and counsel for plaintiff in error offered, out of the hearing of the jury, to prove by that witness that he asked Covington if he was looking for Dewey Wetherington, and Covington told him that he was, and that the witness replied that the sheriff of Massac county had arrested him and taken him in custody. The objection to this offer was sustained.

G. I. Covington testified that he was a constable in Massac county; that he met plaintiff in error on September 10, 1930, about 4:30 in the afternoon; that he had a conversation with him. On objection the court refused to permit the conversation to go into the record, and counsel for plaintiff in error, out of the hearing of the jury, offered to prove by Covington that he had a conversation with plaintiff in error in relation to enforcing the Prohibition act, and that later that night he had another conversation with him and instructed him to go to the east part of the county and make a search for evidence of stills and other evidence of violators of the Illinois Prohibition act, with directions to report what, if anything, he had found. This offer was, on objection of the State, denied. Covington was asked whether plaintiff in error had assisted him in any of the raids conducted by the witness and whether he had ever deputized plaintiff in error to assist in such raids. Objection to this testimony was sustained.

The defense called one Jesse Anderson, also a constable of Massac county, who testified that he met Covington on September 10, 1930, about 5:00 o'clock in the afternoon and later about 8:00 or 8:30, and that they went to plaintiff in error's house and stayed there about two hours. They were asked why they left, and objection to that question was sustained. He testified they went to Wetherington's house to get him.

One L. T. Jackson testified that he saw Covington and Anderson on the 10th of September at plaintiff in error's house. Over objection he was permitted to testify that they went over to Wetherington's house because they were go-

ing down "in the bottoms," and if plaintiff in error had located anything they were going after it.

Plaintiff in error also testified that when he reached the neighborhood of "The Pond" he saw two men standing by a small car; that he did not recognize them, as they were about 150 or 200 yards from him; that they drove away, and he arriving at that point found the whisky there, picked it up and put it in his car; that while he was not an officer he was going to turn the whisky over to the constable, Covington. This in substance is the testimony in the case.

Prior to the taking of evidence plaintiff in error's counsel moved the court to quash the search warrant and to suppress the evidence seized and return it to plaintiff in error. The ground of this motion was that no facts were set up in the complaint for the warrant on which probable cause could reasonably be based and that the warrant was issued wholly upon information and belief. The court, in the absence of the jury, heard evidence of the justice of the peace, the sheriff and deputy sheriff concerning the issuance of the search warrant and denied the motion. Counsel for the People argue that the complaint sufficiently stated the facts to show probable cause, and that whether this is so or not, the sheriff and deputy sheriff were officers of the law, who had information of illegal possession of intoxicating liquor by plaintiff in error, and that when they stopped him and he got out of his automobile they saw therein a number of half-gallon jars of whisky and that they had a right to seize it. In support of this contention the People point out that when plaintiff in error was told that the officers had a search warrant and an offer was made to give him a copy of it or read it to him, he said, "You don't need any search warrant; I've got whisky in my car; go ahead," and that plaintiff in error's statement shows that he waived the service of warrant and there was therefore no infringement of his constitutional privilege. The position of counsel for plaintiff in error

is, not that a defective search warrant was served but that the statement of the officers that they had a search warrant was the thing which caused plaintiff in error to waive service of it and tell the officers to go ahead and search the car, if he did waive service. They argue, as plaintiff in error testified, that he said to the officers, "If you have a search warrant, go ahead and search it." The officers deny that this conversation took place between them and plaintiff in error. The court, on hearing evidence, out of the presence of the jury, concerning the issuance and service of the warrant, found that the conversation that took place was as detailed by the officers. We are of the opinion that it was justified in so finding. No one, of course, can know what was in the mind of plaintiff in error at the time the conversation took place which induced him to waive service of the search warrant. It is evident, whether the warrant was based on a sufficient or insufficient affidavit, service of it was waived by plaintiff in error. This being true, he cannot complain that his constitutional rights have been invaded. *People* v. *Reid,* 336 Ill. 421; *People* v. *Akers,* 327 id. 137.

This seizure was lawful for another reason. Section 42 of the Prohibition act provides that if any sheriff or other police officer shall have "knowledge, information or suspicion of any violation of any provision of this act, he shall diligently investigate and secure evidence of the same" and make a complaint before the proper officer. Section 31 of that act requires that when any officer of the law shall discover any person in the act of transporting intoxicating liquors in violation of law, in any wagon, automobile or other vehicle, "it shall be his duty to seize any and all intoxicating liquors found therein being transported contrary to law, with or without a warrant." It is evident from the record in this case that the sheriff did have "knowledge, information or suspicion" of the violation of the Prohibition act by plaintiff in error, and that when he discovered

plaintiff in error in the act of transporting the intoxicating liquors in violation of the law it was his duty to seize the same, whether he had a warrant or not. It is also settled in this State that where an arrest is made by an officer having reasonable ground for believing that the person arrested is implicated in a crime, such officer has a right to search the person arrested without a search warrant. (*People* v. *Preston,* 341 Ill. 407; *People* v. *Hord,* 329 id. 117; *People* v. *Swift,* 319 id. 359.) It is true, officers have no right to search an automobile without a valid search warrant unless the accused has waived his privilege. In this case, however, if they are to be believed, it was evident to them from what they could see without searching the car, coupled with plaintiff in error's statement that he had liquor, that he was engaged in transporting liquor. Section 40 of the Prohibition act provides that the possession of liquor by any person not legally permitted under the act to possess the same shall be *prima facie* evidence that such liquor is being kept for the purpose of being sold or otherwise disposed of in violation of the provisions of the act. Under these facts the officers were not only authorized but it was their duty to seize the liquor in the possession of plaintiff in error, and though it be said that the search warrant was invalid because not based on a sufficient complaint, the court did not err in refusing to suppress the evidence of the liquor taken from plaintiff in error and return it to him.

Counsel for plaintiff in error also argue that the evidence, if considered with that offered and refused, overcomes the presumption of possession for an illegal purpose, and this being so, section 31 of the Prohibition act does not apply and the officers had no right to seize the whisky. The officers testified that plaintiff in error did not tell them where he got the whisky or what he was going to do with it or by what authority he had it in his possession, either at the time of the arrest or when taken before the justice of the peace. Plaintiff in error testified that he told them

he was going to take the liquor to constable Covington and that he had been deputized by that constable to look for it and therefore had it legally in his possession. This was a question of fact for the jury. They evidently did not believe his story nor the testimony of his witnesses.

Counsel argue, however, that the court refused to permit plaintiff in error to show conversations between the constable and others which would have established the fact that he legally had this liquor in his possession. The ground of this claim is that plaintiff in error was acting as a deputy constable of Covington and that he should have been allowed to prove it. There is nothing in the statute pertaining to the duties of a constable which gives him any authority to deputize others to act in his stead in investigating violations of the Prohibition act, and notwithstanding any such purported authorization, if there was such, plaintiff in error could not procure the right to possess the liquor by a purported authorization of the constable. He testified that he was so deputized, and while there is no directly contrary evidence on that question, such purported authorization, if it was attempted, could avail him nothing. It may be further observed that his witnesses were allowed to testify fully concerning the relations existing between him and the constable, except as to conversations occurring between them. The only defense sought to be made was that of legal possession. Charles Bridges testified concerning the visit of Covington and another man to his (the witness') house on the evening of September 10. He was not permitted to testify concerning the conversation between them. Such conversation was clearly incompetent, as it would come within the hearsay rule. Covington was permitted to testify that he had a conversation with plaintiff in error about 4:00 o'clock on the afternoon of September 10 and that he went to the latter's home about 9:00 o'clock in the evening. The court properly refused to permit him to detail the conversation that occurred. One

Jesse Anderson, who testified that he was a constable of Massac county, stated that he, with Covington, went to the home of plaintiff in error on that evening and stayed there about two hours. Conversations between him and others were not admitted in evidence, but he was permitted to state that they went to the home of plaintiff in error to get the latter. L. T. Jackson was permitted, over objection, to testify as to the purpose for which they had gone to plaintiff in error's home. Plaintiff in error was permitted to testify fully concerning his acts on that night, and stated that he had no intention of selling the liquor or taking it anywhere for sale but that he was going to take it to Covington's house and turn it over to him. The testimony excluded had to do with conversations which were incompetent as self-serving or hearsay. The question whether he was lawfully in possession of the liquor was before the jury, and they decided it contrary to plaintiff in error's contention. We would not be justified in disturbing their findings in that matter.

Objections are made as to instructions given and refused, but the abstract does not contain all the instructions. Some are referred to by number and as to some the abstract purports to give the substance thereof. It has been many times pointed out by this court that in determining whether an instruction is erroneous it is to be considered together with all the other instructions in the case and can only be properly considered where all the instructions are presented by the abstract. *People* v. *Piccirilli,* 306 Ill. 50; *Reavely* v. *Harris,* 239 id. 526; *Thompson* v. *People,* 192 id. 79.

We are of the opinion that plaintiff in error has had in this case a fair trial and that no error exists in the record requiring a reversal of the judgment. The judgment is therefore affirmed.

*Judgment affirmed.*